In the Matter of Isidore Schechter, Petitioner, v New York State Employees' Retirement System et al., Respondents.

Third Department, June 15, 1978

**APPEARANCES OF COUNSEL**

*Murray Rudman* for petitioner.

*Louis J. Lefkowitz, Attorney-General (Jeremiah Jochnowitz* and *Ruth Kessler Toch* of counsel), for respondents.

MIKOLL, J.

Petitioner joined the New York State Employees' Retirement System in 1938. In November, 1974, he applied for retirement, effective January 1, 1975, selecting Option 3, as provided in section 90 of the Retirement and Social Security Law. Petitioner is covered by the retirement plan contained in section 75-h of the Retirement and Social Security Law. In order to determine his retirement allowance under Option 3, it was first necessary to determine what he would receive under Option 0, which was done by multiplying his final average salary (the highest average salary for any three consecutive years) by length of service, which in turn was multiplied by $\frac{1}{50}$ (because he had more than 20 years of service). In computing final average salary and total service, unused vacation and sick leave credits were considered. The actuarial equivalent of petitioner's contribution deficit due to loans was subtracted from the resulting figure, yielding an 0 Option allowance of $23,770.34 per year or $1,980.86 per month. The Referee found that to obtain petitioner's Option 3 allowance the 0 Option allowance was multiplied by a factor calculated by using petitioner's longevity derived from longevity tables adopted by the Comptroller in 1921, and the longevity of petitioner's wife, derived from longevity tables adopted in 1941. The result was the sum of $20,093.07 per year or $1,674.42 per month to be paid monthly for petitioner's lifetime, and, upon his death, a sum equal to one half of that amount will be paid to petitioner's wife. It is undisputed that petitioner's allowance was reduced by $341.06 per year by the use of the 1941 tables in computing his wife's life expectancy.

■ We note initially this application involves only questions of law. No question is presented as to whether a determination made after a hearing is supported by substantial evidence (CPLR 7803, subd 4). Accordingly, the matter was improperly transferred to this court (CPLR 7804, subd [g]). The record being sufficient for disposition of the issues raised, we will treat the case as if it had properly come on for disposition before this court (*Matter of Hogan v Callahan*, 49 AD2d 714; *Matter of Shook v Lavine*, 49 AD2d 238).

■ Relying upon *Birnbaum v New York State Teachers' Retirement System* (5 NY2d 1), petitioner contends that the use of the 1941 longevity tables to determine the life expectancy of his wife will, because the 1941 tables were adopted

after he entered the retirement system, result in a diminution or impairment of his retirement benefits in violation of section 7 of article V of the New York State Constitution. *Birnbaum* held that public retirement systems could not employ mortality tables adopted after a member joined the system to determine the longevity of the *member* in calculating his retirement allowance. The question at issue here is whether mortality tables adopted after a member joined the system could, for the purpose of calculating the member's retirement allowance under Option 3 provided for in section 90 of the Retirement and Social Security Law, be used in calculating the longevity of the *member's beneficiary.* We conclude that the use of these subsequently adopted mortality tables in calculating the longevity of a member's beneficiary is not permissible.

The Court of Appeals concluded in *Birnbaum* that exposure to the vicissitudes of actuarial experience in the future was intended to be prevented by the constitutional amendment. Accordingly, the court held that the use of mortality tables adopted after the member joins the system which result in a reduction of the member's retirement allowance based on tables in effect when he joined the system constituted a prohibited diminution or impairment of retirement benefits. We conclude, therefore, that regardless to whom the revised mortality tables in effect are applied, whether to the member or the member's beneficiary, if the result is a reduction in the member's retirement allowance based on mortality tables in effect when he joined the system there is then a prohibited diminution of benefits.

The determination should be annulled, the petition granted, without costs, and the matter remitted for recomputation of petitioner's retirement allowance under Option 3 based entirely upon mortality tables in effect on the effective date of section 7 of article V of the New York State Constitution.

LARKIN, J. (dissenting). In our view the use of subsequently adopted mortality tables in calculating the longevity of a member's beneficiary is permissible and not within the strictures of section 7 of article V of the State Constitution.

In the only reported case in which this issue has been decided, Special Term in Albany County (CASEY, J.), concluded: "[The member's] election of Option '3' is a knowing and voluntary one and with the purpose of protecting his wife financially during her lifetime, should she survive him. As beneficiary and as a nonmember of the system the wife is not

entitled to the constitutional protection that the petitioner is, and her life expectancy tables may change" *(Matter of Newman v Levitt,* 84 Misc 2d 903, 905). This "knowing and voluntary" election of the member, as with the petitioner herein and in the *Newman* case, in selecting Option 3 rather than Option 0 is the crucial distinction from *Birnbaum v New York State Teachers' Retirement System* (5 NY2d 1). There is no effect whatsoever upon a member's benefits if he elects Option 0, but if he decides to permit a beneficiary to receive a share of his total retirement allowance one of the known consequences is that the beneficiary's life expectancy will be computed by more recent life expectancy tables. It is our conclusion that this situation does not constitute a prohibited impairment of petitioner's contractual relationship with the retirement system.

The determination should be confirmed, and the petition dismissed, without costs.

MAHONEY, P. J., and KANE, J., concur with MIKOLL, J.; STALEY, JR., and LARKIN, JJ., dissent and vote to confirm in an opinion by LARKIN, J.

Determination annulled, petition granted, without costs, and matter remitted for recomputation of petitioner's retirement allowance under Option 3 based entirely upon mortality tables in effect on the effective date of section 7 of article V of the New York State Constitution.